# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

       v.                   :          **CRIMINAL NO. 20-417**

HASSAN ELLIOTT          :
   a/k/a "Haz"

## GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

## I.    INTRODUCTION

Defendant Hassan Elliott is charged in a 31-count superseding indictment with conspiracy to engage in a racketeer influenced corrupt organization ("RICO"), in violation of 18 U.S.C. § 1962(d) (Count 1); conspiracy to distribute 5 kilograms or more of cocaine and marijuana, in violation of 21 U.S.C. § 846 (Count 2); murder in aid of racketeering, and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Counts 3, 10, 14, and 26); assault with a deadly weapon in aid of racketeering, and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Counts 4, 5, 7, 8, 12, 15, 17, 20, and 22); attempted assault with a deadly weapon in aid of racketeering, and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(6) and 2 (Count 19); causing death through the use of a firearm during and in relation to a violent crime or a drug trafficking offense, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A), (j)(1) and 2 (Counts 6, 11, 16, and 27); carrying and using a firearm during and in relation to a violent crime or a drug trafficking offense, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (iii) and 2 (Counts 9, 13, 18, 21, 23, and 25); possession with intent to distribute cocaine and marijuana, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D) and 18 U.S.C. § 2 (Count 24); possession of a firearm by a

felon, in violation of 18 U.S.C. § 922(g) (Count 28); maintaining a drug-involved premises, in

violation of 21 U.S.C. § 856(a)(1) (Count 29); and notices of forfeiture, charging criminal

forfeiture under 21 U.S.C. § 853, 28 U.S.C. § 2461(c), and 18 U.S.C. § 924(d), all arising from

his participation in a RICO conspiracy from as early as in or about June 2017 through in or about

May 2021, his participation in murders, assaults with a deadly weapon in aid of racketeering, his

possession with intent to distribute controlled substances, his possession, use, and discharge of

firearms during and in relation to that conspiracy, and his possession, use, and discharge of

firearms resulting in the deaths of individuals.

     Pursuant to a Plea Agreement, Elliott has agreed to plead guilty to Count 1; a lesser

included offense of Count 2, (namely, 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Counts 4-9, 11-

13, 15-25, and 27-29 of the Superseding Indictment. The government has agreed to dismiss

Counts 3, 10, 14, and 26, charging murder in aid of racketeering, and aiding and abetting, in

violation of 18 U.S.C. §§ 1959(a)(1) and 2, at the time of sentencing. A plea hearing is scheduled

for January 15, 2025.

## II.    <u>PLEA AGREEMENT</u>

     A copy of the Plea Agreement is attached as Exhibit "A" and is incorporated by

reference. The essential terms of the Plea Agreement are:

     The defendant agrees to plead guilty to Count 1; a lesser included offense of Count 2

(namely, 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Counts 4-9, 11-13, 15-25, and 27-29 of the

Superseding Indictment, and not to contest forfeiture as set forth in the notices of forfeiture

charging criminal forfeiture under 21 U.S.C. § 853, 28 U.S.C. § 2461(c), and 18 U.S.C. § 924(d).

     The parties agree that at the time of sentencing the government will make whatever

sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters

consistent with the plea agreement. The defendant agrees to pay a fine and to make restitution as directed by the Court.

The parties agree that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and that the following specific sentence is the appropriate disposition of this case: a sentence of imprisonment within a range of 660-900 months' imprisonment. The parties further agree that at sentencing the government and the defendant may each make a recommendation for any specific sentence of imprisonment within the agreed upon range. If the Court does not accept this plea agreement, then either the defendant or the government will have the right to withdraw from the plea agreement and the defendant will have the right to withdraw the guilty plea.

The defendant agrees to pay the special assessment of $2,500 as directed by the Court. The defendant agrees to pay a fine and restitution as directed by the Court. To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.

The parties enter into the following stipulations under the Sentencing Guidelines:

    a.    The parties agree and stipulate that: 5 kilograms or more but less than 15 kilograms of cocaine, which was then converted into the form that is cocaine base ("crack"), a Schedule II controlled substance, was possessed and was distributed in furtherance of the criminal activity jointly undertaken by the defendant and co-conspirators; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the

defendant in connection with the conspiracy; and the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3.

        b.     The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a two-level downward adjustment under USSG § 3E1.1(a).

        c.     The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a one-level downward adjustment under USSG § 3E1.1(b).

At the time of sentencing, the government will move to dismiss Counts 3, 10, 14, and 26 of the Superseding Indictment, make whatever sentencing recommendation as to supervised release, fines, forfeiture, restitution, and other matters which the government deems appropriate, and comment on the evidence and circumstances of the case.

If the Court accepts the plea agreement and imposes the sentence stated in the agreement, the government agrees that it will not file any appeal of the sentence in this case, and the defendant agrees that he will not file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that

(1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes. However, the defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.

If the Court does not accept the plea agreement and neither party withdraws from the plea agreement, and the defendant enters and maintains a guilty plea, then the parties agree to continue to recommend the sentence stated in the agreement, and the defendant voluntarily and expressly waives all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

    a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

    b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

        i.    that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in the agreement;

     ii.  challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

     iii.  challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

     iv.  that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph (b), no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph (b).

   The defendant acknowledges that filing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement.  The government promises that it will not declare a breach of the plea agreement on this basis based on the mere filing of a notice of appeal, but may do so only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver.  The parties acknowledge that the filing and pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

   The defendant waives all rights to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act.

III.    **ESSENTIAL ELEMENTS OF THE OFFENSES**

To establish a conspiracy to participate in a racketeering ("RICO") enterprise, in

violation of 18 U.S.C. § 1962(d), charged in Count 1, the government must prove the following

elements beyond a reasonable doubt:

(1) That two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity;

(2) That the defendant was party to or member of that agreement; and

(3) That the defendant joined the agreement or conspiracy knowing of its objective to conduct or participate … in the conduct of an enterprise's affairs through a pattern of racketeering activity, and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

To establish a conspiracy to distribute controlled substances in violation of 21 U.S.C. §

846, charged in Count 2, the government must prove the following elements beyond a reasonable

doubt:

(1) That two or more persons agreed to distribute or possess with the intent to distribute a controlled substance;

(2) That the defendant was a party to or member of that agreement;

(3) The defendant joined the agreement or conspiracy knowing of its objectives to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives, that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective;

(4) That cocaine base is a Schedule II controlled substance; and

(5) The 5 kilograms or more but less than 15 kilograms of cocaine base was within the scope of the conspiracy and was as a result of the defendant's own conduct or was reasonably foreseeable to the defendant.

To establish assault with a dangerous weapon in aid of racketeering, in violation of 18

U.S.C. § 1959(a)(3), charged in Counts 4, 5, 7, 8, 12, 15, 17, 20, and 22, the government must

prove the following elements beyond a reasonable doubt:

(1) The enterprise, as defined by 18 U.S.C. § 1959(b)(2), existed at the time charged in the superseding indictment;

(2) The enterprise was engaged in racketeering activity, as defined by 18 U.S.C. §§ 1959(b)(1) and 1961(1);

(3) The enterprise was engaged in, and/or its activities affected interstate or foreign commerce;

(4) The defendant, knowingly and intentionally, committed an assault with a dangerous weapon, that is a firearm;

(5) The defendant committed the assault with a deadly weapon for one or more of the following motives:

    a.  for pecuniary value that was provided by the enterprise, or

    b.  for the purpose of gaining entrance to or for maintaining or increasing the defendant's position in the enterprise; and

(6) The underlying crime of violence violated a specific federal or state statute, as charged in the superseding indictment, in this case, aggravated assault, in violation of 18 Pa.C.S.A. § 2702(a)(4), which provides, in pertinent part, that a "person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon, as defined in 18 Pa.C.S.A. § 2301, which defines "bodily injury" as "impairment of physical condition or substantial pain," and "deadly weapon" as "any firearm."

To establish attempted assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. §1959(a)(6), charged in Count 19, the government must establish the following elements beyond a reasonable doubt:

(1) The enterprise, as defined by 18 U.S.C. § 1959(b)(2), existed at the time charged in the superseding indictment;

(2) The enterprise was engaged in racketeering activity, as defined by 18 U.S.C. §§ 1959(b)(1) and 1961(1);

(3) The enterprise was engaged in, and/or its activities affected interstate or foreign commerce;

(4) The defendant, knowingly and intentionally, attempted to commit an assault with a

dangerous weapon, that is a firearm;

(5) The defendant committed the assault with a deadly weapon for one or more of the following motives:

    a.   for pecuniary value that was provided by the enterprise, or

    b.   for the purpose of gaining entrance to or for maintaining or increasing the defendant's position in the enterprise; and

(6) The underlying crime of violence violated a specific federal or state statute, as charged in the superseding indictment, in this case, aggravated assault, in violation of 18 Pa.C.S.A. § 2702(a)(4), which provides, in pertinent part, that a "person is guilty of aggravated assault if he attempts to cause or intentional or knowingly causes bodily injury to another with a deadly weapon, as defined in 18 Pa.C.S.A. § 2301, which defines "bodily injury" as "impairment of physical condition or substantial pain," and "deadly weapon" as "any firearm

To establish causing death through the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j)(1), Counts 6, 11, and 16, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant possessed a firearm;

(2) The defendant did so in furtherance of a crime of violence which may be prosecuted in federal court, that is murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), as charged in the superseding indictment and defined above; and

(3) The defendant caused the death of a person through the use of the firearm

To establish causing death through the use of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A), (j)(1), charged in Count 27, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant possessed a firearm;

(2) The defendant did so in furtherance of a drug trafficking offense, which may be prosecuted in federal court, that is conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, as charged in the superseding indictment and defined above; and

(3) The defendant caused the death of another person through the use of the firearm.

To establish carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), Counts 9, 13, 18, 21, and 23, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant committed the crime of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3), as charged in the superseding indictment and defined above, and

(2) During and in relation to the commission of that crime the defendant knowingly used or carried a firearm; and

(3) The defendant used, carried and discharged the firearm during and in relation to the crime of assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), as charged in the superseding indictment and defined above.

To establish possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), charged in Count 25, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant committed the crime of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), as charged in the superseding indictment and defined above;

(2) The defendant knowingly possessed a firearm; and

(3) The defendant knowingly possessed the firearm in furtherance of the crime of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), as charged in the superseding indictment and defined above.

To establish a charge of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841, charged in Count 24, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant possessed a mixture or substance containing a controlled substance;

(2) The defendant possessed the controlled substance knowingly or intentionally;

(3) The defendant intended to distribute the controlled substance; and

(4) The controlled substance was a mixture or substance containing a detectable amount of the controlled substance as charged in the superseding indictment.

To establish a charge of possession of firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), charged in Count 28, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant had been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year;

(2) The defendant was aware that he had been convicted of such a crime;

(3) That after this conviction, the defendant knowingly possessed a firearm or ammunition; and

(4) That the firearm or ammunition was in or affecting interstate commerce.

To establish maintaining a drug-involved premises, in violation of 21 U.S.C. 856(a)(1), charged in Count 29, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant opened or maintained any place for the purpose of manufacturing, distributing or using any controlled substance; and

(2) The defendant did so knowingly.

To establish aiding and abetting, in violation of 18 U.S.C. § 2, the government must prove the following elements beyond a reasonable doubt:

(1) The principal committed the offense charged by committed each of the elements of the offense;

(2) The defendant, an accomplice, knew that the offense charged was going to be committed or was being committed by the principal;

(3) The defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the specific offense charged in the superseding indictment;

(4) The principal committed the specific offense; and

(5) The defendant performed an act in furtherance of the offense.

## IV.    **MAXIMUM PENALTIES**

The defendant could be sentenced to the following statutory maximum sentences: Count 1 (conspiracy to participate in a racketeering ("RICO") enterprise), lifetime imprisonment, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Count 2 (conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)), 20 years' imprisonment, a mandatory minimum 3 years' supervised release up to lifetime supervised release, a $1,000,000 fine, and a $100 special assessment; Counts 4, 5, 7, 8, 12, 15, 17, 20, and 22 (assault with a dangerous weapon in aid of racketeering, and aiding and abetting) 20 years' imprisonment, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Counts 6, 11, 16, and 27 (causing death using a firearm during and in relation to a violent crime or a drug trafficking crime, and aiding and abetting) lifetime imprisonment, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Counts 9, 13, 18, 21, and 23 (carrying and using a firearm in furtherance of a violent crime, and aiding and abetting) lifetime imprisonment, a 10-year mandatory minimum term of imprisonment which must be imposed consecutive to any other sentence of imprisonment imposed, 5 years' supervised release, a $250,000 fine, and a $100 special assessment;  Count 25 (carrying and using a firearm in furtherance of a drug trafficking offense, and aiding and abetting) lifetime imprisonment, a 5-year mandatory minimum term of imprisonment which must be imposed consecutive to any other sentence of imprisonment imposed, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Count 24 (possession with intent to distribute controlled substance(s)) 20 years' imprisonment and a mandatory minimum term of 3 years' supervised release, a

$1,000,000 fine, and a $100 special assessment; Count 28 (possession of a firearm by a felon) 10

years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special

assessment; and Count 29 (maintaining a drug involved premises) 20 years' imprisonment, 3

years' supervised release, a $500,000 fine, and a $100 special assessment.

<u>Total Maximum and Mandatory Minimum Sentence</u>: is life imprisonment, a

mandatory minimum of 55 years' imprisonment, 55 years of which is to run consecutive to any

other sentence imposed, a 5-year period of supervised release up to a lifetime of supervised

release, an $8,000,000 fine, and a $2,500 special assessment. Forfeiture of any property used or

intended to be used, in any manner or part, to commit, or to facilitate the commission of, such

offenses, and any property constituting, derived from, or proceeds obtained directly or indirectly

from the commission of such offenses also may be ordered.  Further, if supervised release is

imposed and subsequently revoked, the original term of imprisonment may be increased without

credit for time already spent on supervised release.

## V.    **FACTUAL BASIS FOR THE PLEA**

If this case were to proceed to trial, the government would introduce evidence through

witnesses, and physical and documentary exhibits, which would establish all of the required

elements beyond a reasonable doubt.

### A.  **Racketeering ("RICO") Conspiracy and Drug Trafficking Conspiracy**

Hassan Elliott was a central member of a criminal organization known by several names,

including "1700 Scattergood" ("SG1700"), whose members and associates engaged in acts of

violence, including four murders and assault, and distributed controlled substances on behalf of

the organization. The organization served to enrich its membership through drug sales, and used

violence to preserve the organization's power, territory, and reputation. The organization

operated principally in the Frankford section of Philadelphia. Elliott and other SG1700 members obtained controlled substances, including "crack" cocaine and marijuana, primarily from SG1700 leadership or more senior members, and distributed those controlled substances to users in areas within SG1700's control. In addition to distributing controlled substances, SG1700 members, including Elliott, committed violent acts, such as murder and assaults, on behalf of the organization and for the purpose of maintaining or increasing their standing within the organization.

The organization originally operated in and around the 5300 block of Lesher Street, and used various names including "LBlock," "5300," and "Lesher." Over time, the organization expanded to other areas of Frankford, specifically "1700 Scattergood," which is both a location and the name. In summary, Elliott was a member of the organization during the period of the conspiracy, from June 2017 to May 2021, who committed violent acts, including four murders and numerous assaults, on behalf of the organization and who sold drugs for the organization for approximately four years.

Elliott's membership within SG1700, his occupation as a drug dealer, and the violent acts he committed on behalf of the organization are corroborated by other witnesses, music videos, social media photographs, Instagram messages, telephone contacts between Elliott and members of SG1700, his presence inside of the home where Sergeant James O'Connor was killed and proximity to controlled substances, drug packaging materials, and firearms, his possession of controlled substances, and forensic evidence including the presence of his DNA on firearms recovered from within that property.

Members of SG1700 primarily sold "crack" cocaine and marijuana, but occasionally sold fentanyl. Kelvin Jimenez (a/k/a "Nip"), Dominique Parker (a/k/a "Dom") and S.M., who were all

members of SG1700, pooled their money[1] to purchase powder cocaine and "cooked" the cocaine
to form "crack" cocaine.  Members of SG1700 then cut, weighed, and packaged the drugs into
user quantities, typically at a "trap house" or an abandoned property controlled by the group and
"bundled" a set amount to provide to younger members, including Elliott, to sell on the street
(typically $130 worth of "crack" cocaine, packaged in $5 containers known as "trash cans").
Street-level sellers, including Elliott, in turn sold the "crack" to users, returning $100 to the drug
partnership and keeping a $30 profit for themselves. Over the span of the conspiracy, the
organization trafficked 5 kilograms or more but less than 15 kilograms of cocaine.

Members of SG1700 sold controlled substances in areas within the organization's
control. Some SG1700 members worked in shifts to ensure that the area was always staffed to
avoid missing any sales and sold all day, every day. Individuals who were not members or
associates of SG1700 were not permitted to sell drugs in their area. In the event an unauthorized
individual did attempt to sell within their area of control, SG1700 members would first offer a
warning, but if the sales persisted, would retaliate with violence.

Members of SG1700 gained admission and advanced within the organization by
progressively selling larger quantities of controlled substances for the organization, committing
violent acts on behalf of the organization, often against opposing drug gangs (such as the
Tackawanna Projects or Hawthorne Street gangs), and refusing to cooperate with law
enforcement if arrested (e.g. not "ratting"). Members of SG1700 produced numerous rap videos
and songs describing their crimes.

The organization's territory abuts Frankford Avenue, a heavily trafficked thoroughfare in

---

[1] Members of the group also pooled money to purchase firearms, clothing, and vehicles. They
additionally used group funds to support members who were incarcerated.

Northeast Philadelphia. Members of SG1700 sold controlled substances on Frankford Avenue and at times, permitted associates to sell along Frankford Avenue; however, SG1700 members had a right of first refusal to drug buyers. The organization's reputation for violence was an integral part of the organization's success in that it deterred other individuals or organizations from selling within their area of control and consequently allowed the group to control the sale of drugs within their highly profitable territory.

The illegal sale, distribution, possession with intent to distribute, and trafficking of controlled substances are activities which affect interstate commerce as follows: they have a substantial and detrimental effect on the health and general welfare of the American people; a major portion of the traffic in illegal narcotics and controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because many illegal narcotics and controlled substances: (i) after manufacture, are transported in interstate commerce; (ii) that are distributed locally usually have been transported in interstate commerce immediately before their distribution; and (iii) immediately prior to the possession of such substances, commonly flow through interstate commerce. Local distribution and possession of illegal narcotics and controlled substances contribute to swelling the interstate traffic in such substances; and illegal narcotics and controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate.

Members of SG1700, including Elliott, committed homicides and shootings in the name of the organization, to protect its reputation and territory, and to maintain or increase a member's standing within the organization, including the following:

**B.  Murder of Kaseem Rogers and Shooting of D.S. and J.L.**

Kaseem Rogers was murdered on December 3, 2018. Elliott and SG1700 members Bilal Mitchell and C.A. drove to the territory of an opposing drug gang after exchanging insults on social media with opposition group members. Prior to their departure, S.M. and "Nip" (Kelvin Jiminez) drove to the area to ensure that their intended targets were exposed and police were not in the area. After receiving confirmation, Mitchell drove one car with Elliott in the passenger seat, while C.A. drove a second car directly behind. As Mitchell and Elliott approached the intersection of Tackawanna and Harrison Streets, they noticed two opposition gang members-- Kaseem Rogers and D.S.--standing with others outside of a corner store.

Once at the intersection, Elliott and Mitchell fired at the gang from the first car, each shooting their weapons, striking and killing Rogers, and injuring D.S. and another woman standing with the gang, J.L. Rogers was shot five times in his head, chest, back, and legs. After the shooting, C.A., who was following behind Elliott and Mitchell in a separate car, also fired.

**C.  Shooting of C.S. and M.H.**

On January 25, 2019, just after 5:00 a.m., Elliott and Bilal Mitchell went to the 1800 block of Harrison Street to destroy a makeshift memorial dedicated to Kaseem Rogers that was erected at the scene of his killing. While Mitchell destroyed the memorial, Elliott noticed movement inside a car parked a few feet from the memorial. Elliott, who was armed with a firearm, began shooting at the car, hitting C.S. in the thigh and M.H. in the hip, who were asleep inside the car.

**D.  Murder of Tyrone Tyree**

On March 1, 2019, at approximately 11:59 a.m., Elliott and Khalif Sears[2] murdered

---

[2] Khalif Sears was 17-years old at the time of this murder. He turned 18 in July 2019, prior to

Tyrone Tyree on the 5300 block of Duffield Street. Tyree drove to the 5300 block of Duffield Street to buy marijuana. Elliott and Sears approached to sell to him but saw that he had a wad of cash and decided to rob Tyree. Before they approached to commit the robbery, Elliott and Sears called Kelvin Jiminez for permission to leave the drug block unattended.

When they pointed their guns at Tyree, Tyree reached down – likely for the gearshift – and Elliott and Sears shot and killed him. At the scene, officers recovered seven .40 caliber fired cartridge casings ("FCCs") and four 9mm FCCs.

Elliott and Sears fled down alleyways between Brill and Scattergood Streets toward the 5300 block of Charles Street. They stashed the handguns inside a barbecue grill in the rear yard of 1775 Scattergood Street (which is captured on residential surveillance video), and Sears left his coat on the fence. Officers followed footprints in the snow down the alleyway and discovered the abandoned evidence. Police ultimately recovered: (1) a .40 caliber Smith and Wesson semiautomatic handgun, loaded with two live rounds in the magazine and one in the chamber; and (2) a 9mm Smith & Wesson semiautomatic handgun, loaded with 11 live rounds in the magazine, with an obliterated serial number. Inside the coat pockets, Sears left an ALCATEL flip phone, a tube of ChapStick, and headphones. Both firearms were matched to the FCCs at the murder scene. DNA analysis showed strong links between the .40 caliber handgun and Elliott, between the ALCATEL phone and Sears and Elliott, between the coat and Sears, between the earbuds and Sears, and between the ChapStick and Sears.

**E.  Shooting of R.B.**

Members of the SG1700 routinely traveled to the Tackawanna Projects—a territory

committing any other substantive charges.

controlled by a nearby opposition group— to shoot rival gang members. This was done to show their willingness to kill or engage in violence to protect their drug area and retaliate against any threats, perceived or actual, from other groups. In the event the group did not encounter any known opposition members, the group sent a message to the opposition by shooting anyone present in the opposition territory, even those unaffiliated with the opposition, to communicate to the opposition that the group was looking for them and as proof that they had crossed enemy lines. This was the case when, in the early morning hours of August 20, 2019, SG1700 members received word that opposition gang members were standing on a corner within the Tackawanna Housing Projects, and decided to go to the area to shoot them. As Bilal Mitchell and Kelvin Jimenez attempted to get a car to use during the shooting, Elliott and Dominique Parker rode bicycles to the location. When Elliott and Parker arrived on the 1800 block of Fillmore Street, they saw R.B. sitting on his porch and both began shooting, hitting R.B. ten times throughout his body. After the shooting, Mitchell took the guns used during the shooting from Elliott and Parker and returned them to 1688 Bridge Street, a property used by SG1700 members to package controlled substances and store firearms.

**F. Murder of Dontae Walker and Shooting at U.W.**

Dontae Walker was murdered on August 22, 2019, by SG1700 members in retaliation for the shooting of a 5300 Lesher/SG1700 member on August 17, 2019. The organization was unsure which opposition group was responsible for the shooting, so they retaliated against both of their main opposition groups. One of these groups was the Hawthorne Street gang. On the day of the murder, Elliott, Bilal Mitchell, Dominique Parker, and M.B., all SG1700 members, agreed to try to shoot members of the Hawthorne Street gang who were on a nearby porch on Marlowe Street. Mitchell and Elliott approached the targeted location from one direction and M.B. and

Parker approached from another.  They converged on the corner of Hawthorne and Bridge

Streets, where they saw Walker sweeping the sidewalk near a barber's chair. Mitchell and the

others fired at Walker and U.W. Walker was killed.

### G.  Shooting of R.F.

On December 20, 2019, Elliott and other SG1700 members exchanged insults over social

media with members of the Tackawanna Projects opposition gang and agreed to meet up at

Wissinoming Park in Frankford. Elliott, Khalif Sears, Bilal Mitchell, K.S., Kelvin Jimenez, and

other SG1700 members armed themselves with firearms and went to the area and waited in an

alleyway for the opposition gang members to arrive. The group noticed a car that resembled the

same car driven by an opposition gang members, and, Sears, Elliott, K.S., and Mitchell opened

fire, shooting the driver, R.F., in the hand. The group later learned that the car did not belong to

an opposition gang member, and that they had shot the wrong car.

### H.  Attempted Shooting of L.H. and Shooting of R.R.

On December 27, 2019, Bilal Mitchell exchanged words with members of the Hawthorne

Street gang, including L.H. After the exchange, Mitchell went to a property used by SG1700 and

told Elliott and K.S. of the exchange and the opposition gang's whereabouts. Mitchell, Elliott,

and K.S. agreed to go retaliate by shooting the opposition gang members. Mitchell armed

himself with a handgun and stationed himself in a nearby alleyway in the event one of their

targets ran in that direction, while Elliott and K.S. approached using another alleyway. Elliott

opened fire from across the street as the opposition gang members, including L.H., stood on the

corner of Bridge and Hawthorne Streets. Elliott missed his intended targets, but instead struck

R.R. in the stomach as he drove through the intersection.

**I.  Shooting of M.M.**

On January 28, 2020, Elliott and other SG1700 members argued with Tackawanna Project opposition gang members over Instagram. The SG1700 members decided to retaliate by shooting at the opposing members. Fellow SG1700 member M.J. drove Elliott, Khalif Sears, Bilal Mitchell, Sherman Easterling, and S.M. to the 4800 block of Tackawanna Street. When they arrived, SG1700 members shot at the opposing gang members who were standing outside, grazing M.M. in the head.

**J.  Murder of Sergeant James O'Connor and Use of 1688 Bridge Street**

Beginning in the Summer of 2019, SG1700 members rented the middle room inside the second-floor apartment of 1688 Bridge Street from V.R., a "crack" cocaine user. At times, in lieu of rent, SG1700 members provided V.R. with "crack" cocaine, and frequently sold "crack" cocaine to V.R. and his associates. At first, while all SG1700 members had access to the room, only Bilal Mitchell and M.E. resided there until Elliott and Khalif Sears, who were both wanted for the March 1, 2019 Tyrone Tyree murder and running from police, moved into the property. Later, Sherman Easterling joined Mitchell, Elliott, and Sears and also began staying there. Over time, the middle room became a "stash house" for SG1700 members who used it as a place to meet, store their shared firearms and drugs, and package drugs, including cocaine and marijuana, into user quantities for distribution. The location of 1688 Bridge Street was particularly advantageous to SG1700 members due to its proximity to the area where they sold drugs.

Only members of SG1700 had access to the room and its contents, including the communal firearms stored therein. Because Elliott and Sears were wanted for murder and actively evading capture, they were almost always present inside the room. Elliott, Sears, and other SG1700 members were aware of their fugitive status. Elliott openly discussed with SG1700

members his plan that they would shoot police to avoid apprehension.

In the early morning hours of March 13, 2020, Elliott, Mitchell, Sears, and Easterling were present inside the middle room. At approximately 6:00 a.m., after knocking without success, members of the Philadelphia Police Department SWAT Unit breached the door of 1688 Bridge Street to search for and arrest Elliott. As the SWAT officers ascended the staircase, Elliott retrieved a .22 caliber Mossberg rifle that was laying nearby and began firing at the officers through the closed middle room door in the direction of the officers, striking SWAT Sergeant James O'Connor in the chest and killing him.

After the killing, Mitchell, Elliott, Sears and Easterling were ordered out of the room. Philadelphia Police detectives obtained a search and seizure warrant to search the second-floor apartment. During their search, detectives and Crime Scene Unit officers found nine handguns of various calibers, makes, and types littered throughout the room, as well as the .22 caliber Mossberg rifle used to kill Sergeant O'Connor concealed under the bed. Philadelphia Police personnel also found "crack" cocaine in both bulk and user quantities, marijuana in bulk and user quantities, and drug packaging materials. Officers searched Mitchell incident to his arrest and found an additional 59 containers of "crack" cocaine concealed in his groin.
The controlled substances recovered from inside the middle room and from Mitchell's person were analyzed by the Philadelphia Chemistry Lab and determined to be "crack" cocaine and marijuana. In total, officers recovered approximately 30 grams of "crack" cocaine and 442 grams of marijuana from inside the middle room and on Mitchell's person. A narcotics expert would have testified that these amounts are, in his/her opinion, consistent with distribution and not personal use. The government would also have offered expert testimony as to the use of firearms by drug dealers to protect their product and profits.

At the time of this murder, Elliott knew he had been convicted on January 24, 2018, in Pennsylvania of carrying a firearm without a license, a third-degree felony in violation of 18 Pa.C.S. § 6106(a)(1), based on his guilty plea to the charge. The firearms listed in Count 28 were manufactured outside of Pennsylvania, such that their presence in Pennsylvania means that they traveled in interstate commerce.

Respectfully yours,

JACQUELINE C. ROMERO
United States Attorney


s/ Ashley N. Martin
ASHLEY N. MARTIN
CHRISTOPHER DIVINY
LAUREN STRAM
Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Change of Plea Memorandum to be served by electronic mail upon the following:

Patrick Egan, Esquire
Fox Rothchild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Pegan@foxrothchild.com

Kenneth Montgomery, Esquire
198 Rogers Avenue
Brooklyn, New York 11225
ken@kjmontgomerylaw.com
*Attorneys for Hassan Elliott*

s/ *Ashley N. Martin*
ASHLEY N. MARTIN
Assistant United States Attorney

Date: January 13, 2025

# Government's Exhibit A

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

           v.                   :         **CRIMINAL NO. 20-417**

HASSAN ELLIOTT             :
a/k/a "Haz"

### GUILTY PLEA AGREEMENT

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the

defendant, and the defendant's counsel enter into the following guilty plea agreement. Any

reference to the United States or the government in this agreement shall mean the Office of the

United States Attorney for the Eastern District of Pennsylvania.

1.       The defendant agrees to plead guilty to Count 1; a lesser included offense of

Count 2 (namely, 21 U.S.C. § 846, 841(a)(1), (b)(1)(C)); and Counts 4-9, 11-13, 15-25, and 27-

29 of the Superseding Indictment, charging him with conspiracy to engage in a racketeer

influenced corrupt organization ("RICO"), in violation of 18 U.S.C. § 1962(d) (Count 1);

conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846 (a lesser included

offense of Count 2); assault with a deadly weapon in aid of racketeering, and aiding and abetting,

in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Counts 4, 5, 7, 8, 12, 15, 17, 20, and 22);

attempted assault with a deadly weapon in aid of racketeering, and aiding and abetting, in

violation of 18 U.S.C. §§ 1959(a)(6) and 2 (Count 19); causing death through the use of a

firearm during and in relation to a violent crime or a drug trafficking offense, and aiding and

abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A), (j)(1) and 2 (Counts 6, 11, 16, and 27);

carrying and using a firearm during and in relation to a violent crime or a drug trafficking

offense, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (iii) and 2

(Counts 9, 13, 18, 21, 23, and 25); possession with intent to distribute cocaine and marijuana, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D) and 18 U.S.C. § 2 (Count 24); possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count 28); and maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Count 29), and not to contest forfeiture as set forth in the notices of forfeiture charging criminal forfeiture under 21 U.S.C. § 853, 28 U.S.C. § 2461(c), and 18 U.S.C. § 924(d), all arising from his participation in a RICO conspiracy from as early as June 2017 through in or about May 2021, his participation in murders, assaults with a deadly weapon in aid of racketeering, his possession with intent to distribute controlled substances, his possession, use, and discharge of firearms during and in relation to that conspiracy, and his possession, use, and discharge of firearms resulting in the deaths of individuals. The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

     2.     At the time of sentencing, the government will:

     a.     Move to dismiss Counts 3, 10, 14, and 26, charging murder in aid of racketeering, and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 of the Superseding Indictment as to this defendant. The defendant waives the statute of limitations as to all counts to be dismissed under this agreement and agrees that if the defendant withdraws from, or successfully challenges, the guilty plea entered under this agreement, or if these counts are otherwise reinstated under the terms of this agreement, neither the statute of limitations nor the Double Jeopardy Clause will bar prosecution on any of these dismissed counts.

     b.     Recommend a sentence of imprisonment consistent with paragraph 5 below, and make whatever sentencing recommendation as to supervised release, fine, forfeiture, restitution, and other matters which the government deems appropriate.

c.    Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

d.    Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

3.    The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum and mandatory minimum sentences: Count 1 (conspiracy to participate in a racketeering ("RICO") enterprise), lifetime imprisonment, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Count 2 (conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(C), a lesser included offense of Count 2), 20 years' imprisonment, a mandatory minimum 3 years' supervised release up to lifetime supervised release, a $1,000,000 fine, and a $100 special assessment; Counts 4, 5, 7, 8, 12, 15, 17, 20, and 22 (assault with a dangerous weapon in aid of racketeering, and aiding and abetting), 20 years' imprisonment, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Counts 6, 11, 16, and 27 (causing death using a firearm during and in relation to a violent crime or a drug trafficking crime, and aiding and abetting), lifetime imprisonment or death, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Counts 9, 13, 18, 21, and 23 (carrying and using a firearm in furtherance of a violent crime, and aiding and abetting), lifetime imprisonment, a 10-year mandatory minimum term of imprisonment which must be imposed consecutive to any other

- 3 -

sentence of imprisonment imposed, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Count 25 (carrying and using a firearm in furtherance of a drug trafficking offense, and aiding and abetting), lifetime imprisonment, a 5-year mandatory minimum term of imprisonment which must be imposed consecutive to any other sentence of imprisonment imposed, 5 years' supervised release, a $250,000 fine, and a $100 special assessment; Count 24 (possession with intent to distribute controlled substance(s)), 20 years' imprisonment, a mandatory minimum term of 3 years' supervised release, a $1,000,000 fine, and a $100 special assessment; Count 28 (possession of a firearm by a felon), 10 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special assessment; and Count 29 (maintaining a drug-involved premises), 20 years' imprisonment, 3 years' supervised release, a $500,000 fine, and a $100 special assessment.

Total Maximum and Mandatory Minimum Sentence: is lifetime imprisonment, a mandatory minimum of 55 years' imprisonment, 55 years of which is to run consecutive to any other sentence imposed, a 3-year period of supervised release up to a lifetime of supervised release, an $8,000,000 fine, and a $2,500 special assessment. Forfeiture of any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses, and any property constituting, derived from, or proceeds obtained directly or indirectly from the commission of such offenses also may be ordered. Further, if supervised release is imposed and subsequently revoked, the original term of imprisonment may be increased without credit for time already spent on supervised release.

4.      The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 5 years on Counts 1, 6, 9, 11, 13, 16, 18, 21, 23, 25, and

- 4 -

27; 2 years on Counts 2, 4-5, 7-8, 12, 15, 17, 20, 22, 24, 28, and 29; and 1 year on Count 19. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

5.    The parties agree that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and that the following specific sentence is the appropriate disposition of this case: a term of imprisonment within the range of 660 to 900 months (55 to 75 years). The parties further agree that, at sentencing, the government and the defendant may each argue for any specific term of imprisonment within the agreed range specified above. If the Court does not accept this plea agreement, then either the defendant or the government will have the right to withdraw from the plea agreement and the defendant will have the right to withdraw the guilty plea.

6.    In order to facilitate the collection of the criminal monetary penalties to be imposed in connection with this prosecution, the defendant agrees fully to disclose all income, assets, liabilities, and financial interests, held directly or indirectly, whether held in his own name or in the name of a relative, spouse, associate, another person, or entity, and whether held in this country or outside this country. Accordingly:

a.    The defendant will submit a completed Financial Statement of Debtor to the U.S. Attorney's Office, in a form it provides and as it directs, within 14 days of execution of this plea agreement. The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

.

b.      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any monetary penalty imposed by the Court.

c.      Upon request by the United States, the defendant also agrees to submit to a financial deposition or interview prior to sentencing, and provide all documents within the defendant's possession or control as requested by the U.S. Attorney's Office regarding the defendant's financial resources and that of the defendant's household.

d.      The defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States or victims. The defendant otherwise shall not devalue any property worth more than $1,000 before sentencing, without the prior approval of the United States.

e.      The defendant also agrees to execute any documents necessary to release any funds held in any repository, bank, investment, other financial institution, or any other location in order to make partial or total payment toward any monetary penalty that the Court may impose.

f.      If the defendant fails to comply with this paragraph of the plea agreement or if any of the defendant's representations pursuant to the requirements set forth in this paragraph are false or inaccurate, the government may elect to: void this agreement; consider such representations in deciding whether to file or withdraw any motion under Guideline Section 5K1.1; and/or argue that the defendant is not entitled to a downward adjustment for acceptance of responsibility under Guideline Section 3E1.1. The government may also elect to: void the forfeiture portion of the agreement and try the forfeiture before the Court and seek a larger forfeiture; and/or pursue any and all forfeiture remedies available at law or equity. The defendant

- 6 -

agrees to waive any right to a trial by jury on all forfeiture issues, and to waive any claim at trial based on any statute of limitations.

7.      The defendant agrees to pay a fine and restitution, if any, in an amount to be determined by the Court. The defendant agrees that any restitution or fine imposed by the Court shall be due and payable immediately and on such terms and conditions that the Court may impose. In the event the Court imposes a schedule for the payment of restitution or fine, the defendant understands and agrees that such a schedule represents a minimum payment obligation and does not preclude the United States Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation under applicable federal and/or state law.

8.      The defendant agrees that forfeiture, restitution, fine, assessment, tax, interest, or other payments in this case do not constitute extraordinary acceptance of responsibility or provide any basis to seek a downward departure or variance from the applicable Sentencing Guideline range.

9.      The defendant agrees to pay the special victims/witness assessment in the amount of $2,500 at such time as directed by the Court.

10.     The parties agree to the following with respect to forfeiture of assets:

a.      The defendant agrees that, pursuant to Notice of Forfeiture 1, based on the defendant's conviction for his offenses of conspiracy to distribute cocaine and marijuana, as charged in Count 2 (lesser included offense in violation of 21 U.S.C. §846, 841(a)(1),(b)(1)(C)), his offenses of distribution and possession with intent to distribute cocaine and marijuana, as charged in Counts 24, and his offense of maintaining a drug-involved premises, as charged in Count 29, he forfeits his right, title, and interest in the following assets and agrees that such

- 7 -

assets were used or were intended to be used to commit or facilitate the offense and are subject to

forfeiture under 21 U.S.C. § 853: (1) a Mossberg, model 715T, .22 caliber semi-automatic rifle,

with an obliterated serial number; (2) Taurus, Model PT111 G2c, 9mm semi-automatic pistol,

bearing serial number TLW02144; and (2) a Glock, model 19, 9mm semi-automatic pistol,

bearing serial number RFA-920; (3) 16 live rounds of ammunition; (4) a Polymer80, model P80,

9mm semi-automatic pistol, with no serial number; (5) an extended magazine and 32 live rounds

of 9mm ammunition; (6) a Springfield Armory, model XD-45, .45 caliber semi-automatic pistol,

bearing serial number GM417893; (7) 10 live rounds of .45 caliber ammunition; (8) an FNH,

model Forty-Nine, .40 caliber semi-automatic pistol, with an obliterated serial number that was

later restored and determined to be 517NN02488; (9) 11 live rounds of .40 caliber ammunition;

(10) a Ruger, model SR-1911, .45 caliber semi-automatic pistol, bearing serial number 671-

91844; (11) 8 live rounds of .45 caliber ammunition; (12) a Taurus, model PT111 G2c, 9mm

semi-automatic pistol, bearing serial number TLW02144; (13) 13 live rounds of 9mm

ammunition; (14) a Smith & Wesson, model M&P 40, .40 caliber semi-automatic pistol, bearing

serial number NBM7950; (15) 16 live rounds of .40 caliber ammunition; (16) a Polymer80,

model P80, .40 caliber semi-automatic pistol, with no serial number; (17) 14 live rounds of .40

caliber ammunition; (18) an FNH, model FNS-40, .40 caliber semi-automatic pistol, bearing

serial number GKU0124573; (19) 15 live rounds of .40 caliber ammunition; (20) a KelTec,

Model P-11, 9mm semi-automatic pistol, bearing serial number AXA36; and (21) 8 live rounds

of 9mm ammunition.

        b.     The defendant agrees further that, pursuant to Notice of Forfeiture 2,

based on the defendant's conviction for his offenses of possessing, carrying, using and

discharging a firearm during and in relation to drug trafficking and violent crimes, and aiding

and abetting; causing death while using and carrying a firearm during and in relation to a drug

trafficking and violent crimes, and aiding and abetting; as charged in Counts 6, 9, 11, 13, 16, 18,

21, 23, 25, 27, and 28 of the Superseding Indictment, he forfeits his right, title, and interest in the

following assets and agrees that such assets are firearms or ammunition involved in or used in

knowing violation of the offenses and subject to forfeiture under 18 U.S.C. § 924(d): (1) a

Mossberg, model 715T, .22 caliber semi-automatic rifle, with an obliterated serial number; (2)

Taurus, Model PT111 G2c, 9mm semi-automatic pistol, bearing serial number TLW02144; and

(2) a Glock, model 19, 9mm semi-automatic pistol, bearing serial number RFA-920; (3) 16 live

rounds of ammunition; (4) a Polymer80, model P80, 9mm semi-automatic pistol, with no serial

number; (5) an extended magazine and 32 live rounds of 9mm ammunition; (6) a Springfield

Armory, model XD-45, .45 caliber semi-automatic pistol, bearing serial number GM417893; (7)

10 live rounds of .45 caliber ammunition; (8) an FNH, model Forty-Nine, .40 caliber semi-

automatic pistol, with an obliterated serial number that was later restored and determined to be

517NN02488; (9) 11 live rounds of .40 caliber ammunition; (10) a Ruger, model SR-1911, .45

caliber semi-automatic pistol, bearing serial number 671-91844; (11) 8 live rounds of .45 caliber

ammunition; (12) a Taurus, model PT111 G2c, 9mm semi-automatic pistol, bearing serial

number TLW02144; (13) 13 live rounds of 9mm ammunition; (14) a Smith & Wesson, model

M&P 40, .40 caliber semi-automatic pistol, bearing serial number NBM7950; (15) 16 live rounds

of .40 caliber ammunition; (16) a Polymer80, model P80, .40 caliber semi-automatic pistol, with

no serial number; (17) 14 live rounds of .40 caliber ammunition; (18) an FNH, model FNS-40,

.40 caliber semi-automatic pistol, bearing serial number GKU0124573; (19) 15 live rounds of .40

caliber ammunition; (20) a KelTec, Model P-11, 9mm semi-automatic pistol, bearing serial

number AXA36; and (21) 8 live rounds of 9mm ammunition.

c.     The defendant agrees to the entry of a preliminary order of forfeiture pursuant to Federal Rule of Criminal Procedure 32.2(b) as soon as possible after the guilty plea and before sentencing. Pursuant to Rule 32.2(b)(4), the defendant further agrees that, upon the request of the government, the preliminary order of forfeiture may be made final before his sentencing. The defendant waives all statutory deadlines, including but not limited to deadlines set forth in 18 U.S.C. § 983.

d.     The defendant acknowledges that forfeiture is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea. The defendant further waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

e.     The defendant agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including any claims, defenses, or challenges arising under the Double Jeopardy or Excessive Fines Clauses of the Eighth Amendment, resulting from any forfeiture imposed in this case and/or any pending or completed administrative or civil forfeiture actions, and stipulates that such forfeiture is not grossly disproportionate to his criminal conduct.

f.     The defendant agrees to take all necessary action to pass clear title of the assets listed in this paragraph to the United States, including, but not limited to, completing any documents required to transfer title of these assets to the United States. The defendant also

- 10 -

agrees to take all necessary action to ensure that the assets listed in this paragraph are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

g.    The defendant consents to the interlocutory sale of any or all of the assets upon motion of the government, following the entry of a preliminary order of forfeiture.

h.    The defendant agrees that he will not file, or assist any other party in filing, a claim or petition asserting an interest in or otherwise contesting the forfeiture of any of the assets listed in this paragraph.

i.    In the event that any claim is made by third parties to any of the assets listed in this paragraph, the defendant agrees to forfeit substitute assets equal in value to those assets claimed by third parties.

11.    The defendant agrees not to contest the administrative or civil forfeiture to the government of (1) a Mossberg, model 715T, .22 caliber semi-automatic rifle, with an obliterated serial number; (2) Taurus, Model PT111 G2c, 9mm semi-automatic pistol, bearing serial number TLW02144; and (2) a Glock, model 19, 9mm semi-automatic pistol, bearing serial number RFA-920; (3) 16 live rounds of ammunition; (4) a Polymer80, model P80, 9mm semi-automatic pistol, with no serial number; (5) an extended magazine and 32 live rounds of 9mm ammunition; (6) a Springfield Armory, model XD-45, .45 caliber semi-automatic pistol, bearing serial number GM417893; (7) 10 live rounds of .45 caliber ammunition; (8) an FNH, model Forty-Nine, .40 caliber semi-automatic pistol, with an obliterated serial number that was later restored and determined to be 517NN02488; (9) 11 live rounds of .40 caliber ammunition; (10) a Ruger, model SR-1911, .45 caliber semi-automatic pistol, bearing serial number 671-91844; (11) 8 live rounds of .45 caliber ammunition; (12) a Taurus, model PT111 G2c, 9mm semi-automatic pistol, bearing serial number TLW02144; (13) 13 live rounds of 9mm ammunition; (14) a Smith &

- 11 -

Wesson, model M&P 40, .40 caliber semi-automatic pistol, bearing serial number NBM7950; (15) 16 live rounds of .40 caliber ammunition; (16) a Polymer80, model P80, .40 caliber semi-automatic pistol, with no serial number; (17) 14 live rounds of .40 caliber ammunition; (18) an FNH, model FNS-40, .40 caliber semi-automatic pistol, bearing serial number GKU0124573; (19) 15 live rounds of .40 caliber ammunition; (20) a KelTec, Model P-11, 9mm semi-automatic pistol, bearing serial number AXA36; and (21) 8 live rounds of 9mm ammunition. The defendant waives all statutory deadlines, including but not limited to deadlines set forth in 18 U.S.C. § 983. The defendant agrees to waive any claims, defenses, or challenges arising under the Double Jeopardy or Excessive Fines Clauses of the Eighth Amendment, resulting from any forfeiture imposed in this case and/or any pending or completed administrative or civil forfeiture actions, and stipulates that such forfeiture is not grossly disproportionate to his criminal conduct.

12.     Except as stated in paragraph 5 above, the defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

13.     Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) the parties are free to argue, except as stated below, the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

- 12 -

a.    The parties agree and stipulate that: 5 kilograms or more but less than 15 kilograms of cocaine, which was then converted into the form that is cocaine base ("crack"), a Schedule II controlled substance, was possessed and was distributed in furtherance of the criminal activity jointly undertaken by the defendant and co-conspirators; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the defendant in connection with the conspiracy; and the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3.

b.    The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a two-level downward adjustment under USSG § 3E1.1(a).

c.    The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a one-level downward adjustment under USSG § 3E1.1(b).

14.    If the Court accepts the plea agreement and imposes the sentence stated in paragraph 5 of this agreement, the government agrees that it will not file any appeal of the sentence in this case, and the defendant agrees that he will not file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on

- 13 -

collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes. However, the defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.

15.     If the Court does not accept the plea agreement and neither party withdraws from the plea agreement, and the defendant enters and maintains a guilty plea, then the parties agree to continue to recommend the sentence stated in paragraph 5, and the defendant voluntarily and expressly waives all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

a.     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

b.     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

i.     that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above;

- 14 -

          ii.       challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

          iii.      challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

          iv.      that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph (b), no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph (b).

       17.    The defendant acknowledges that filing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government promises that it will not declare a breach of the plea agreement on this basis based on the mere filing of a notice of appeal, but may do so only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties acknowledge that the filing and pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

       18.    The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may

be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

19.    The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

20.    It is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

JACQUELINE C. ROMERO
United States Attorney


HASSAN ELLIOTT
Defendant

THOMAS R. PERRICONE
Chief, Criminal Division
Assistant United States Attorney

PATRICK EGAN, ESQ.
KENNETH MONTGOMERY, ESQ.
Counsel for the Defendant

s/Ashley N. Martin
ASHLEY N. MARTIN
CHRISTOPHER DIVINY
LAUREN STRAM
Assistant United States Attorneys

Date: 1/9/25

- 16 -

Attachment A

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-417 |
| HASSAN ELLIOTT<br>a/k/a "Haz" | : | |

### ACKNOWLEDGMENT OF RIGHTS

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1.  I understand that I do not have to plead guilty.

2.  I may plead not guilty and insist upon a trial.

3.  At that trial, I understand

    a.  that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

    b.  that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

    c.  that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

    d.  that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

    e.  that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

    f.  that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

    g.  that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

       h.     that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

      4.     I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

      5.     I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

      6.     I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

      7.     Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

      8.     I understand and have discussed with my attorney that, before deciding whether to accept my guilty plea agreement, the Court, at sentencing will calculate the Sentencing Guidelines range (including whether any departures apply), and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

    (1) the nature and circumstances of the offense and my personal history and characteristics;

    (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.


HASSAN ELLIOTT
Defendant


PATRICK EGAN, ESQ.
KENNETH MONTGOMERY, ESQ.
Counsel for the Defendant


Dated: 1/9/25